IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2019 Session

## STATE OF TENNESSEE v. RAYMOND DANA CANTER

**Appeal from the Circuit Court for Dickson County
No. 22CC-2016-CR-449, 22CC-2016-CR-452, 22CC-2016-CR-453, 22CC-2016-CR-455, 22CC-2016-CR-483, 22CC-2016-CR-484, 22CC-2016-CR-490, 22CC-2016-CR-506, 22CC-2016-CR-512   Suzanne Lockert-Mash, Judge**

———————————————————

### No. M2018-01183-CCA-R3-CD

———————————————————

The defendant, Raymond Dana Canter, entered an open plea to ten counts of felony theft, one count of failure to appear, one count of simple possession of marijuana, one count of aggravated burglary, one count of felony vandalism, and two counts of evading arrest. The trial court sentenced the defendant to an effective sentence of thirteen years of incarceration in the Tennessee Department of Correction. On appeal, the defendant challenges the trial court's imposition of consecutive sentencing. Upon our review of the record, arguments of the parties, and pertinent authorities, we affirm the judgments of the trial court. However, we remand the case for a corrected judgment in 2016-CR-512.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded for Entry of Corrected Judgment**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Raymond Dana Canter.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Ray Crouch, District Attorney General; and Sarah W. Wojnarowski, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On April 11, 2018, the defendant entered an open plea to ten counts of felony theft, one count of failure to appear, one count of simple possession of marijuana, one count of aggravated burglary, one count of felony vandalism, and two counts of evading arrest, with sentencing to be determined by the trial court. A sentencing hearing was held on June 1, 2018.

During the sentencing hearing, the State introduced the presentence report as well as the testimony of Detective Chad Fussell and Clayton Ellis. Detective Fussell with the Dickson Police Department testified he was an investigator on many of the defendant's cases, specifically several incidents between August 30, 2016, and September 5, 2016. Detective Fussell received a call about a truck stolen from the Dickson County Co-op sitting in the middle of Spring Street. The vehicle was swabbed for DNA and returned to its owner.

A short time later, Detective Fussell was called to Pruett Electric, where a truck was stolen and driven through a fence surrounding the property. Detective Fussell then learned the defendant, while driving the stolen truck from Pruett Electric, had visited his girlfriend, Bonnie Cochran[1], and slashed the tires of a truck belonging to her father, Clayton Ellis. The Pruett Electric vehicle was later abandoned in Franklin, Tennessee.

Investigator Zach Wolf with the Franklin Police Department contacted Detective Fussell and informed him that a Dodge Ram was stolen from the same location the Pruett Electric vehicle was abandoned. The Dodge Ram was spotted in Dickson and a short pursuit ensued which was terminated due to public safety concerns. Later that evening, the stolen Dodge Ram was abandoned in the middle of the street outside the home of Mr. Ellis, and Mr. Ellis's truck, which had previously had the tires slashed, was stolen by the defendant. Mr. Ellis's truck was spotted by police the next day, and another pursuit was initiated. However, as before, the pursuit was terminated a short time later for public safety concerns. Mr. Ellis's truck was subsequently abandoned in a church parking lot.

Finally, officers received a call from Berry Automotive about a vehicle parked in the parking lot with the lights on. Officer Mullins approached the vehicle, which had been stolen from the Dickson County Landfill, discovered the defendant asleep inside, and placed him under arrest. Officers located a loaded handgun inside the vehicle, and a stolen ATV was found in the bed of the truck. Detective Fussell spoke with the defendant in jail and, after waiving his *Miranda* rights, the defendant admitted to many of the events that had taken place.

---

[1] Witnesses refer to Ms. Cochran as both Bonnie Cochran and Bonnie Ellis.

Clayton Ellis testified his daughter, Ms. Cochran, was in a relationship with the defendant for approximately eight years and the couple lived with him for several months in early 2016. However, after the defendant accused Ms. Cochran of domestic violence in May 2016, Mr. Ellis provided the defendant with written notice to move out. Although the defendant moved out of Mr. Ellis's home on June 15, 2016, he returned several times and refused to leave until Mr. Ellis threatened to call the police. Then, in August 2016, Mr. Ellis received a call from the police. An officer told Mr. Ellis they were looking for the defendant and suspected he was at Mr. Ellis's home. When Mr. Ellis arrived at his house, the defendant was gone, but a set of keys and a five dollar bill were missing. The following night, the defendant stole Mr. Ellis's truck, and, when the truck was recovered a few days later, it had been driven over 1,100 miles. Mr. Ellis testified he was scared of the defendant during this time, and stayed in a motel because he was afraid the defendant would return to his house.

Following Mr. Ellis's testimony, the State concluded its proof. The defendant then called Joseph Meadows. Mr. Meadows testified he had known the defendant for approximately thirteen years as a family friend. He acknowledged he had several interactions with the court system due to "assaults, and then I've had issues with drugs mainly, with the dealings and the using and stuff." However, in April 2016, Mr. Meadows entered the Synergy program and has been sober since that time. Mr. Meadows testified he now sponsors nine people through AA and NA and manages a bonding company. Mr. Meadows also testified he visits the defendant every weekend and has agreed to be his sponsor. Finally, Mr. Meadows stated he called several rehab facilities on the defendant's behalf and received approval for the defendant to attend two facilities.

The defendant testified on his own behalf, stating he found a cell phone in a gas station bathroom on April 1, 2016. He did not "feel comfortable" leaving it with the store clerk and, instead, decided to return the phone to AT&T the next morning. However, because he had to go out of town for work the next day, he left the phone with a friend, who was supposed to return it for him. The defendant was later arrested at Walmart when police spotted him wearing the same clothes he had worn in the gas station's surveillance video. At the time of his arrest, the defendant had marijuana and Lortabs in his possession. The defendant made bail and was released from jail. However, he was arrested again in June for vandalizing Ms. Cochran's vehicle. The defendant denied committing this crime and insisted he was with his sister in Hickman County.

The defendant then testified he was contacted by Ms. Cochran on August 28, 2016, and met with her to drink and smoke marijuana. Afterward, he was walking down the street when bounty hunters attempted to pick him up on a failure to appear charge. The defendant ran for several hours until he spotted a van with the keys inside. He stole

the van and drove it for a few days until he was involved in a high speed chase with police. After eluding police, the defendant discovered an ATV sitting in a barn. However, he was unable to leave on the ATV because the property was surrounding by a fence. Instead, he stole a Lincoln Town Car, driving it for several days before abandoning it and walking to a friend's house.

The defendant then found a shed containing another ATV, which he drove to Mr. Ellis's house. After speaking to Ms. Cochran through her bedroom window, the defendant left and was approached by the police. However, he was able to elude police by driving the ATV into the woods and escaping on foot. He ran back to Mr. Ellis's house and spent the next several hours with Ms. Cochran. He then returned to the ATV he had abandoned that morning and rode to a friend's house.

The defendant testified he next went to a gas station, but ran down a hill behind a building when he saw Officer Mullins, who had a warrant for the defendant's arrest. The defendant ran through the woods to the Dickson County Co-op, stealing a fertilizer truck and driving it through the gate to get off of the property. However, police were in pursuit, and another chase ensued. The defendant parked the truck in the middle of the road and escaped on foot, jumping a wall into Pruett Electric. There, he stole another truck and rammed the gate to exit the property.

As the defendant was driving the Pruett Electric truck, he passed Ms. Cochran and followed her home. Ms. Cochran would not exit her vehicle, only cracking the window to see what the defendant wanted. As the defendant questioned Ms. Cochran why she had called the police on him before, he noticed she was calling 911. The defendant then slashed the tires on Ms. Cochran's vehicle, left her house, and drove to his father's house in Franklin. Before returning to Dickson, the defendant abandoned the Pruett Electric truck at a construction site and stole a Dodge Ram.

Once back in Dickson, the defendant eluded two police officers and drove to Mr. Ellis's house. The defendant stopped the truck in the middle of the road and began walking toward the house, where Ms. Cochran was sitting on the front porch. Rather than approaching Ms. Cochran, he entered Mr. Ellis's truck and drove away. After driving Mr. Ellis's truck for two days, the defendant parked it in a church parking lot and telephoned Ms. Cochran to let her know where to find it. He then stole a truck from the Dickson County Landfill, which he used to retrieve the ATV that had been used in the second police chase. Finally, the defendant pulled into the parking lot at Berry Automotive and fell asleep before being taken into custody.

- 4 -

The defendant testified he began using marijuana daily in December 2007, after meeting Ms. Cochran. However, he did not start using methamphetamine until May 2016. The defendant admitted using both drugs throughout the crime spree.

On cross-examination, the defendant admitted to having a prior DUI conviction in Ohio in 2004, although he denied drinking to excess. The defendant also admitted he was charged with vandalism in Hickman County in January 2016, and pled guilty following his arrest in this case. He also received a false report charge in Hickman County in July 2016. That charge was reduced, and the defendant received a six month sentence. The defendant admitted he was out on several bonds during the string of property crimes.

When asked about his work history, the defendant admitted, contrary to his statement in the presentence report, he stopped running his own towing service in January 2016. Instead, he worked for JRS Wrecker Service from January 2016 until April 2016 and completed odd jobs until he was arrested in September 2016. However, the defendant stated he wants to run a family owned towing business upon his release.

In sentencing the defendant, the trial court considered the evidence presented during the sentencing hearing, including the presentence report and the arguments of counsel. In reviewing the applicable enhancement factors, the trial court found enhancement factors (3), the offense involved more than one victim, (8), the defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community, and (13), at the time the felony was committed, the defendant was released on bail and later convicted of the prior misdemeanors, applied to the defendant. Tenn. Code Ann. § 40-35-114(3), (8), (13). The trial court also applied mitigating factor (1), the defendant's criminal conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). However, the trial court gave this factor little weight because, although no proof was presented that the defendant's actions caused injury, the defendant engaged the police in three pursuits, two of which were terminated for public safety. In imposing partial consecutive sentences, the trial court found the defendant had an extensive criminal history. Tenn. Code Ann. § 40-35-115(b)(2). At the conclusion of the sentencing hearing, the defendant was sentenced as a Range I, standard offender as follows:

| Case | Offense | Sentence |
| --- | --- | --- |
| 2016-CR-449 | Count 1: Theft (C felony) | 2 years |
| | Count 2: Failure to Appear (E felony) | 2 years |
| | Count 3: Simple Possession (A misdemeanor) | 11 months, 29 days |
| 2016-CR-490 | Theft (D felony) | 3 years |
| 2016-CR-452 | Theft (C felony) | 5 years |

| 2016-CR-454 | Theft (D felony) | 3 years |
|---|---|---|
| 2016-CR-453 | Aggravated Burglary (C felony) | 5 years |
| 2016-CR-483 | Theft (D felony) | 3 years |
| 2016-CR-484 | Theft (D felony) | 3 years |
| 2016-CR-455 | Count 1: Theft (D felony) | 3 years |
| | Count 2: Vandalism (D felony) | 3 years |
| | Count 3: Evading Arrest (A misdemeanor) | 11 months, 29 days |
| 2016-CR-512 | Theft (C felony) | 5 years |
| 2016-CR-513[2] | Count 1: Theft (C felony) | 5 years |
| | Count 2: Evading arrest (E felony) | 2 years |
| 2016-CR-506 | Theft (C felony) | 5 years |

The trial court further ordered the sentences for 2016-CR-490, 2016-CR-452, and 2016-CR-512 to run consecutively, for a total effective sentence of thirteen years. This timely appeal followed.

## *Analysis*

On appeal, the defendant argues the trial court abused its discretion in imposing consecutive terms. Specifically, the defendant argues his crime spree "does not fit the true definition of having a record of extensive criminal activities." The defendant also asserts the trial court failed to articulate its reasoning for applying consecutive sentences. The State contends the trial court properly relied on the defendant's extensive criminal history in imposing partial consecutive sentencing. We agree with the State.

When determining the appropriate sentence, the trial court must consider these factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) the evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made on his own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant when determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103.

---

[2] Although the defendant pled guilty and was sentenced in 2016-CR-454 and 2016-CR-513, these cases are not included in the current appeal.

- 6 -

When the record establishes the sentence imposed by the trial court was within the appropriate range and reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The trial court must state on the record the factors it considered and the reasons for the sentence imposed. Tenn. Code Ann. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id*. at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)).

As applicable in this matter, Tennessee Code Annotated section 40-35-115 provides that the trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence "the defendant is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). This factor has been interpreted "to apply to offenders who have an extensive history of criminal convictions and activities, not just to a consideration of the offenses before the sentences court." *State v. Palmer*, 10 S.W.3d 638, 648 (Tenn. Crim. App. 1999). "[A]n extensive record of criminal activity may include criminal behavior which does not result in a conviction." *State v. Koffman*, 207 S.W.3d 309, 324 (Tenn. Crim. App. 2006). Additionally, "current offenses may be used in determining criminal history for purposes of consecutive sentencing." *State v. Carolyn J. Nobles*, No. M2006-00695-CCA-R3-CD, 2007 WL 677861, at *12 (Tenn. Crim. App. Mar. 7, 2007), *no perm. app. filed.*

The defendant argues the record does not support a finding that he had an extensive criminal history, and the trial court erred by failing to articulate its reasoning for applying consecutive sentences. During its oral findings, the trial court described the defendant's five month crime spree, stating "over about a four or five-month period, you have 14 felonies that you have been convicted of, approximately seven or eight vehicles stolen, several ATVs, and you've broken into a house." The defendant's other charges and convictions were also discussed, including convictions for vandalism, obstruction of justice, and DUI. Finally, the trial court noted the defendant admitted to smoking

marijuana daily for several years and using methamphetamine for several months prior to his arrest. After reviewing this information, the trial court found the proof "certainly" showed the defendant was "an offender whose record of criminal activity is extensive." The evidence does not preponderate against the trial court's finding, and it is clear from the record that the trial court thoroughly discussed the defendant's criminal history prior to imposing partial consecutive sentences. Thus, the trial court did not abuse its discretion by imposing consecutive terms.

Finally, we detect a clerical error in the judgment form of 2016-CR-512 that requires correction. Although the trial court ordered the defendant's sentence in 2016-CR-512 to run consecutively to his sentences in 2016-CR-452 and 2016-CR-490, this is not reflected on the judgment form. Therefore, we must remand the case to the trial court for entry of a corrected judgment form in 2016-CR-512 indicating it runs consecutively to 2016-CR-452 and 2016-CR-490.

### *Conclusion*

For the aforementioned reasons, the judgments of the trial court are affirmed. However, we remand this case for entry of a corrected judgment as specified in this opinion.

_____

J. ROSS DYER, JUDGE